Smith, C. J.,
now delivered his opinion.
The statute of Feb. 3, 1789 (ed. 1805, 165), expressly requires “that the judge of probate, before he allow the account of any executor relating to his executorship, shall cause the heirs of such estate to be notified, in such manner as he shall think most proper, of the time and place for examining and allowing such account.” By the word “ heirs,” as here used, we must doubtless understand those interested in the estate, whether devisees, legatees, or heirs properly so called. This provision of the statute seems to be no more than what the ecclesiastical law, that is, our common law, before required.
It has been said by the counsel for the appellee, though not much insisted on, that, as it was the duty of the judge of probate to cause notice to be given, and he was the judge of the manner of notifying, we are bound to presume that he discharged his duty, and that due notice has been actually given. If the judge of probate ordered notice, it must appear on the minutes of the proceedings. There are no such minutes, nor any evidence of the fact. Besides, though it is the duty of the judge to cause notice to be given, yet this duty is to be performed at the instance of the executor. The judge in this case was not bound to know that there was any such person in existence as Mary Elizabeth Symmes. The executor may have represented that she was dead, or that Mrs. Jackson, the mother, was the only person concerned in interest. We may therefore take it for granted that the judge of probate, before he proceeded to allow the account of administration presented by the appellee, did not cause the *139 appellant to be notified, in any manner, of the time and place for examining and allowing the account, and that in fact she had no notice. (a)
One thing is very certain, that the remedy by appeal will be wholly inadequate in cases like the present. The very circumstance of examining and allowing the account without giving notice, and in the absence of those who ought to have been parties, which is the grievance complained of in the present application, will of itself generally preclude redress by appeal.
The appeal is calculated to afford the parties redress for the errors of the judge of probate, (b) and nothing more.
But it is further contended, 011 the part of the appellee, that the decree allowing the account ought not to be revised and annulled.
1st. Because the appellant was not entitled to notice, not being interested at the time in the estate, at least so far as it could be affected by the accouut allowed.
2d. If interested and entitled to notice, yet the decree is not injurious to her, inasmuch as she is not bound by it; she maj proceed against the executor in the same way as if no account had been allowed ; this decree will not protect appellee against any just claim on the part of the appellant.
I. As to the question of interest of the appellant in the estate.
The reason why heirs are entitled to notice before allowance of the administration account is because their interest may be affected by it. When it cannot be affected, that is lessened, then there can be no just reason for giving notice. It is only those whose interest is affected who can complain of an injury in not being made parties.
*140 Let us see what interest the appellant has by the will in the estate of her late father; and whether the administration account, as allowed, can in any way affect it.
By the will (proved Oct. 18, 1797, by appellee and Mary Jackson; the appellant was also named executrix, but did not join in the probate), there is devised to Sarah Little, testator’s sister, the use and occupation of a certain part of a dwelling-house, as long as she shall remain unprovided for, absent from her husband, or a widow, and shall choose to reside in it herself.
All the rest and residue of the real estate, the interest arising from the testator’s public and private securities, with all the remainder of his personal estate, are devised to his wife during her widowhood; but, in case she marry, then, in lieu of this provision, she is to take what the law gives the widow of an intestate.
All the rest, residue, remainder, and reversion of the testator’s estate, real and personal, are devised to the appellant and her heirs; if she die without leaving issue, then there is a devise over.
What is not given to the mother is bequeathed to the daughter, as to the public and private securities.
When the interest of securities is given absolutely, without any limitation, it is equivalent to a gift of the securities themselves. But when the interest, as in this case, is given for a limited time only, it is not a bequest of the securities, but an annuhy to the amount of the interest accruing, and the securities themselves' are bequeathed to the appellant. The executors can hold the securities and pay over the interest to the mother, but the daughter has a vested interest which she might devise, and which, in case of her dying intestate, would go to her heirs or legal representatives.
As to the rest of the personal estate, it is bequeathed to Mrs. Jackson while she shall remain the testator’s widow.
It is contended that this gives Mrs. Jackson the absolute property, and that the remainder to the daughter is too remote, and so void. It is well settled “ that, when the words of a devise or bequest would give an estate tail in ráai estate, *141 when applied to personalty they give the absolute property, unless you can find in the will something to show the testator meant otherwise.” 3 Ves. Jr. 101; 2 Fearne, 161, 169, 170, &c.; 2 Bro. Ch. C. 575 ; 3 Atk. 283.
And it was formerly held, that a personal thing given to one for life, or even for a day, was a gift for ever, and could not bear a limitation over ; but the construction now is that such devise passes only the use and profits, and not the thing itself. 1 Peere Wins. 1, 502, 651; 2 Atk. (82), 321; 3 Atk. 283; 2 Fearne, 168, 169-175, 177, 186, 194, &c.; 2 Bro. Ch. C. 575; 1 Bro. Ch. C. 270, 280, 285; Co. Litt. 20 a (n. 5). Such devises are very common in this State, and have been always construed according to what has been just mentioned as the modern law in England on the subject.
The result is, that, as to the real estate, the mother was tenant during her remaining the testator’s widow, and the daughter entitled to the remainder. As to the public and private securities on interest, the mother, during the same term, was entitled to the interest arising or accruing, and the daughter was entitled to the securities and to the interest when the mother’s annuity or charge on them ceased. As to the rest of the personal estate, the mother was entitled to the use and profits during her widowhood ; they were then to be the property of the daughter. Any thing, therefore, which may destroy, or unjustly occasion the sale of, the real estate or the securities, or exhaust or lessen the other personal estate, except the mere use and occupation of the mother, is an injury done to the daughter; it affects her interest. It really affects her interest more than it does that of the mother, who has only the use during her widowhood; her estate expired April 1, 1805 [1801?].
It would not be necessary to give notice to one who should have a mere contingent interest, which, at the time, had not become vested, and which might never vest. The person entitled to notice must be one who has a present, a vested, interest; but that may be of a remainder as well as of property in possession. For example, in this case, it was not necessary to notify Mrs. Little, or the persons next *142 in remainder after the appellant, because it depends on a contingency whether these persons will ever have any interest in the estate. '* But the appellant then had a vested interest.
It is not necessary to decide whether it is absolutely necessary to notify one at the time interested in the estate, but who is not to be affected by the account as stated for allowance, and actually allowed. That is, if we suppose, in this case, that Mrs. Jackson were the absolute owner of the personal estate other than the securities, and the mother’s estate more than sufficient (as it would have been) to reimburse all the advances made by the executor, and for which he claimed allowance and reimbursement, and the estate administered on were the mother’s and not the daughter’s (i. e. the estate credited in the administration account), it would seem not necessary to notify the daughter. She could not complain if the executor wasted the estate of her mother. Her interest was not affected, and her interest, as the daughter or probable heir to the mother, would not be entitled to any regard.
The conclusion I draw from these premises is, that the appellant, having, at the time the account was presented for allowance, an interest in the estate, and which may be, and indeed must be, materially affected by the account allowed, was entitled to notice.
It has been said that the estate might never come to the daughter; the mother might have wasted it before her death ; the daughter could not compel the mother to give security ; (a) and we have no court of chancery to protect it against a sale by the mother.
To this it may be answered, The mother had a right to occupy and use: whatever effect this might have in consuming or lessening the value, the daughter can have no remedy, for she has suffered no injury. But, if the mother should waste or dispose of the property, it may at least be questioned whether her bonds would not be forfeited. Her bonds oblige *143 her to administer the estate according to the will, and her office of executrix obliges her, and Mr. Libbey also, safely to keep this property, that the objects of the testator’s bounty may not be disappointed, (a)
But, however this may be, owing to a defect in our jurisprudence, if wrong maybe committed with impunity, or injustice done without possibility of redress, it is no reason why Mr. Libbey should settle his account without giving notice to those interested. If our probate courts, or other courts, have not powers enough to protect the rights of legatees, it is no reason why they should deprive legatees of the power of protecting themselves. It does not appear to be conclusive reasoning that, because our courts cannot completely guard and defend the interest of one in remainder of personal property, against the person having the life estate, or the use and profits only for a season, that therefore the property is absolute in the first taker.
II. We now come to the second question; namely, whether what is proposed by this petition is the proper remedy.
It has been said that the remedy cannot be by repeal, because here was no want of jurisdiction and no false suggestions. But this is not correct; for the judge of probate may have been led into the error of omitting to order notice, on the false suggestion of the executor, that there was no person entitled. Besides, it was the duty of the executor to have requested an order of notice, general or special, and the executor omitting to do his duty will warrant a repeal just as much as doing it amiss. In the case of administration granted, it is a good cause of revocation that those who ought to have been cited were not cited. Love. Wills, 19; Com. Dig. Admr. (B. 8). (b) Yet it must be confessed there are serious difficulties in annulling a decree allowing an administration account. Suppose the decree carried into execution. *144 To annul the decree without any further proceedings will be of no avail. The Only remedy, in such case, is compelling the administrator to settle a new account, in which he must be charged with what was unjustly allowed in the old. This end will be just as well attained by declaring that the account allowed without due notice given is no protection to the administrator ; and that those interested, and who were not notified, may call upon him in the Probate Court to rectify its errors, and submit to revision, and to account for what may be found wrong on review.
To annul the whole decree would also in many cases be doing more than what is necessary or just. Suppose ten persons interested in the administration account; nine notified, and one omitted. The decree may be right as it respects the nine; at any rate, they have been fully heard, or might have been so. To reverse the decree as to the tenth person, only, who was not notified, would be saying that a new account may be settled as it respects him. Would it not come to the same thing to say that the decree was binding on the persons notified, and, as to the one omitted, that he might compel the executor to account with him for what was unjustly allowed ? Why should the executor be compelled to produce vouchers a second time against those who had an opportunity of examining them before? In the Probate Court, each defends pro inter esse suo ; one is not'obliged to join with others, is not affected by their, doings or omissions, (a) The doctrine that a decree must be reversed if one heir not notified leads also to this inconvenience, if not absurdity, that oftentimes a just decree will be reversed; for the question is only, Was due notice given ? Whereas, by holding that the account may be opened and revised, the decree will be reversed if altogether wrong, rectified if partly so, and suffered to remain as it is if just.
For these, and many other reasons that might be mentioned, all parties would be gainers by allowing the decree to be conclusive on the parties, and reviewable by those who were not notified.
*145 It is conceived that such are the authorities and the usage in the ecclesiastical courts in England.
Swinburne on Wills, p. 468, treating of the manner of making an account, says “ that the creditors, legatories, and all others having interest, are to be cited to be present at the making of the account; otherwise tbe account made in their absence (and they never called) is not prejudicial unto them.”
In tbe same manner it is laid down in Burn (4 Burn, 426), a respectable authority. No case, it is apprehended, can be found, of a decree of this kind reversed for want of notice to those interested. They must have redress. It is against every principle of natural justice that they should be bound by decrees to which they were no parties, and could not become snob. The redress has been by allowing them to contest it when attempted to be put in execution ; to have it revised and rectified if wrong ; and, if completely executed, to compel the accountant to refund or account anew for what he has unjustly received.
It is not necessary that the Court should pronounce judgment at this Term. The appellant may proceed in the Probate Court, to obtain a revision of the account heretofore allowed. If this should be resisted by the executor, it will bring into view the question now agitated, whether such a decree is conclusive on the appellant. I am of opinion that it is not, but we shall then have an opportunity of viewing the matter in all its bearings; we shall be able to see a little of the practical application of the principal, a thing always to be desired in establishing rules.
Livermore, J., agreed in the result as stated by the Chief Justice.
Wingate, J., absent.
Judgment was not pronounced at this Term.-(a)
*146 The judgment may be, that the decree of the judge of probate dismissing this petition be affirmed (it would seem to be improper to affirm the decree complained of). The reasons may be given; the proper remedy being by application to the judge of probate to revise and correct the former account, to which this decree is no bar.[1]

а) It appears by the files that Mrs. Jackson, the mother of the appellant, the only person, except the appellant, concerned, co-executrix, and who joined in proving the will, signified her consent to the allowance of the account, Aug. 4, 1800. She died April 1, following.

б) It is true, persons who were not in fact parties before the judge may appeal; but, unless they have notice, it is not to be presumed they will have a»y knowledge of the decree.

«) An inventory, not security, is now usually given in such case. 2 Atk. (82).

а) Richards v. Baker, 2 Atk. 321, semble, 324.

б) Toll. Ex. 93; 4 Burn, 426; Manuscript, Descent, &c., 504, 1117. See 1 Mass. 200, where it would seem that probate decree of this kind reversed, because founded on report of referees where the law does not allow of reference.

 Decrees are in their nature several; they bind the parties only.

 Remedy must be : (1) by reversing former decree, and so leaving parties as before any account settled; (2) by considering the decree as binding on those notified; and, without reversal, as reviewable by those not notified by new proceedings in the Probate Court; (3) by affirming or reversing the decree in part, i. e. by making it, on this application, such as it should have been.

 I. The decision that notice would not he presumed is sustained by Hathaway v. Clark, 1827, 5 Pick. 490. Compare Hubbard, J., in Marcy v. Marcy, 1843, 6 Met. (Mass.) 360, 368, 369, with Thomas, J., in Jenks v. Howland, 1855, 3 Gray, 536, 538.
Where there is no statute requiring notice to parties in interest to be present at the hearing, the record of the Probate Court need not contain any thing relative to notice or appearance; and facts as to this may be proved by parol in abatement of an' appeal. Hiscox’s Appeal, 1861, 29 Conn. 561.
II. As to the daughter’s vested remainder, see Burleigh v. Clough, 1872, 52 N. H. 267.
III. It is now held that an appeal may be taken from a void decree. Such appeals, “ though not in strictness necessary,” “ may be very appropriate;” as the reversal or annulment of the decree will “place upon the record the real truth of the case, and save the proceedings from all appearance of inconsistency.” See Church, J., in Sturges v. Peck, 1837, 12 Conn. 139, 141, 142; Metcalf, J., in Pettee v. Wilmarth, 1862, 5 Allen, 144; Bell, C. J., in Morgan v. Dodge, 1862, 44 N. H. 255, 259.
IV. A decree of partition by the Probate Court is void as against an attaching creditor of an heir, who is not notified. Procter v. Newhall, 1820, 17 Mass. 81, 91, 92 (and see Munroe v. Luke, 1837, 19 Pick. 39). A decree assigning the whole estate to one heir, she paying the others respectively a certain sum, is void as against an heir absent from the State, for whom no agent was appointed: Smith v. Rice, 1814, 11 Mass. 507; but is good as against another heir who assented to the assignment, and received the sum awarded to her: Rice v. Smith, 1817, 14 Mass. 431.
An administration account was settled in the Probate Court in 1827, but there was no legal notice given, as there was no guardian over the heirs, who were then minors. In 1851, the Probate Court adjudged that the decree of 1827 was not conclusive, on account of the want of notice, and laid that settlement entirely aside, and re-examined the accounts of the administrator from the beginning, and decreed a balance against him. On appeal from this decree, it was held, that, as no cause was shown for the delay, it was too late to open the account, and the decree was reversed. Child’s Appeal, 1851, 23 N. H. 225.